IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JERRY LEE COOPERWOOD                                                                       PLAINTIFF

v.                                              No. 4:05CV00902 JLH

THE CITY OF KENSETT, ARKANSAS, a Public
Body Corporate and Politic;
CHARLES A. YAERGER, In His Official Capacity as
Chief of Police for the City of Kensett, Arkansas; and
MARK WAGES, In His Individual and Official
Capacity as Police Officer for the City of Kensett, Arkansas         DEFENDANTS

**OPINION AND ORDER**

This action arises out of the shooting of Jerry Lee Cooperwood by Officer Mark Wages of the City of Kensett Police Department. Cooperwood brings suit under 42 U.S.C. § 1983 alleging that Wages unreasonably seized him in violation of the Fourth Amendment, deprived him of his liberty by unreasonably seizing him without due process in violation of the Fifth Amendment,[1] and used excessive force against him in violation of the Fourth, Fifth, and Fourteenth Amendments. He also alleges that the City of Kensett failed to train Wages properly. In addition, Cooperwood asserts claims under Arkansas law for battery against Wages. The defendants have now moved for partial summary judgment on Cooperwood's claim for failure to train against the City, as well as the claims against Wages for unreasonable seizure as to the initial stop. For the following reasons, the defendants' motion for partial summary judgment is granted.

---

[1] Although Cooperwood references the Fifth Amendment in one paragraph of his complaint, it is not clear that he actually intends to pursue a Fifth Amendment claim distinct from his claims under the Fourth and Fourteenth Amendments. The Court will address the defendants' arguments regarding the Fifth Amendment, if necessary, at trial.

**I.**

On the night of March 4, 2005, Wages was on patrol in his police vehicle. At approximately 2:00 a.m., Wages spotted an individual, later identified as Cooperwood, riding towards him on a bicycle. Because Cooperwood was wearing a hood, Wages could not determine whether he was an adult or a minor. The City of Kensett has a curfew that prohibits minors from being out from 10:00 p.m. until 5:00 a.m. on weekdays and from 11:00 p.m. until 5:00 a.m. on weekends. Wages waved at Cooperwood in an attempt to get him to stop. Cooperwood waved at Wages with his head, continued past Wages's patrol car, and stopped at his sister's house. Cooperwood then went to the carport of the house and opened the screen to the backdoor. While opening the screen door, Cooperwood looked back at the street and saw blue lights flashing, as Wages had pulled his patrol car into the house's driveway and activated his police lights. Wages exited his patrol car, approached Cooperwood, and asked to see his identification. Cooperwood replied that he did not have it with him and needed to go inside the house to get it. At that point, Wages recognized Cooperwood. Wages knew that Cooperwood had outstanding warrants for his arrest. While the particulars of what happened next are disputed, it is undisputed that Wages shot Cooperwood twice.

Two other claims of excessive force have been brought against Kensett police officers since 1998. In 1998 Dovie LeMay filed a complaint with the Kensett Police Department alleging that Officer Scott Baker had used excessive force when he arrested her. That complaint was investigated and determined to be unfounded. In October 2002, Pablo Recendiz allegedly was beaten by officers Griffin and Armstrong. No complaint was filed with the Kensett Police Department regarding that incident, but Recendiz did file suit against the officers on October 5, 2005, in this district. Trial in that case is scheduled to begin on February 20, 2007.

## II.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## III.

Wages asserts that he is entitled to qualified immunity for his seizure of Cooperwood. "To survive a summary judgment motion based on qualified immunity, a plaintiff must assert a violation of a constitutional right." *Biby v. Bd. of Regents, of the Univ. of Neb. at Lincoln*, 419 F.3d 845, 850 (8th Cir. 2005). Apprehension by use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 1699, 85 L. Ed. 2d 1 (1985). A warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments. *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005). If an officer has probable cause to arrest a citizen, however, no Fourth Amendment violation occurs and the officer cannot be liable. *Peterson v. City of Plymouth*, 60 F.3d 469, 473 (8th Cir. 1995). In addition, an officer is not liable for de minimis seizures, which do not violate the Fourth Amendment. *United States v. Robinson*, 455 F.3d 832, 834 (8th Cir. 2006).

While many of the facts surrounding the events of that night are contested, it is undisputed that Wages recognized Cooperwood shortly after asking Cooperwood to produce his identification

and that Wages knew Cooperwood had outstanding warrants for his arrest. Because of his knowledge of the outstanding warrants, Wages had probable cause to arrest Cooperwood when he recognized him. *United States v. Ellison*, 462 F.3d 557, 563 (6th Cir. 2006). With respect to the "seizure" that occurred the moment that Cooperwood saw Wages's patrol car in the driveway with its lights flashing, the amount of time between that point and the time that Wages recognized Cooperwood was within the bounds of what the Eighth Circuit has found, in other situations, to constitute de minimis seizures. *See Robinson*, 455 F.3d at 834 (citing cases). Because Wages's initial stop of Cooperwood did not violate the Constitution, Wages is entitled to qualified immunity on Cooperwood's claim that the initial stop violated his constitutional rights. Whether Wages used excessive force when he shot Cooperwood, however, is a matter left for trial. Wages concedes that issues of fact must be determined before the Court can decide the issue of qualified immunity on the excessive force claim.

**IV.**

Cooperwood asserts a claim for failure to train against the City as well as Yaerger and Wages in their official capacities, which is in effect a claim solely against the City. *See Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992). "A city cannot be held liable under § 1983 unless [plaintiff] prove[s] the existence of an unconstitutional municipal policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S. Ct. 915, 926, 99 L. Ed. 2d 107 (1988). Inadequate training can be said to represent city policy only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989). "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the

inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390, 109 S. Ct. at 1205.

For his failure to train claim to survive a motion for summary judgment, Cooperwood must provide evidence that the City "was on notice that its training procedures were inadequate and likely to result in violation of constitutional rights." *Larkin v. St. Louis Housing Authority Development Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004) (internal quotations omitted). If the City has notice that its training procedures are inadequate and likely to result in violation of constitutional rights, the City's failure to address it amounts to deliberate indifference. *Id*. There are two ways that Cooperwood can prove notice. First, he may show that the failure to train "is so likely to result in a violation of constitutional rights that the need for training is patently obvious." *S.J. v. Kansas City Public Sch. Dist.*, 294 F.3d 1025, 1029 (8th Cir. 2002). Second, Cooperwood may show notice through providing evidence of "a pattern of misconduct indicat[ing] that the [city's] responses to a regularly recurring situation are insufficient to protect . . . constitutional rights." *P.H. v. Sch. Dist. of Kansas City*, 265 F.3d 653, 660 (8th Cir. 2001).

The Supreme Court has stated that, because police officers are armed by a municipality and are certain to be required to use force on occasion, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton*, 489 U.S. at 390 n.10, 109 S. Ct. at 1205 n.10. The City has presented evidence that it meets its obligation to train its officers on the use of deadly force. It is undisputed that the City requires all law enforcement officers within one year of their employment to complete a police training program

certified by the Arkansas Commission on Law Enforcement Standards and Training. This requirement comports with Arkansas law. ARK. CODE ANN. § 12-9-106(a)(1). It is undisputed that part of that training program includes training on the proper use of firearms. It is undisputed that the City provides law enforcement officers on-the-job training concerning the City's policies. It is undisputed that the City's policies include a policy that states that officers making arrests "will not infringe upon the Constitutional rights of any persons [and] will not physically mistreat or verbally harass any person in custody"; a policy that allows officers to "employ only that amount of force which is reasonable and necessary to effect an arrest or assume control of a situation"; a specific policy on the use of weapons, which states that officers "shall resort to the use of a firearm under law only when absolutely necessary to protect the life of the officer or the lives of citizens" and "shall not remove a firearm from the holster or display weapons unless the officer feels his life or the life of another person may be threatened"; and a specific policy limiting the use of deadly force by officers to situations where officers have to defend themselves "from death or serious injury," "defend the life of another officer," or "defend the life of a third party." The Eighth Circuit has found policies such as these to be constitutionally sufficient. *See Otey v. Marshall*, 121 F.3d 1150, 1152-53, 1156 (8th Cir. 1997); *see also Andrews v. Fowler*, 98 F.3d 1069, 1076-77 (8th Cir. 1996); *Williams-El v. Johnson*, 872 F.2d 224, 230 (8th Cir. 1989). Cooperwood has not produced any evidence or advanced any argument that would show that these policies are inadequate. Cooperwood does not dispute that Wages met the training requirements as set forth in the City's policies.

Rather, the gist of Cooperwood's claim against the City is that prior incidents of excessive force went undisciplined. "A city may also be liable under § 1983 where there had been a prior pattern of unconstitutional conduct that [was] so persistent and widespread as to have the effect and

force of law, and the pattern caused the alleged injury." *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 799 (8th Cir. 1998) (internal quotations omitted). "A plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." *Id.* (internal quotation omitted). Cooperwood has not made that showing here. Cooperwood offers evidence of two incidents of prior police misconduct: Dovie LeMay's complaint against Officer Baker, and Pablo Recendiz's lawsuit for excessive use of force.[2] Taken together, however, these incidents do not show the existence of a pattern of unconstitutional conduct about which the City was deliberately indifferent. Neither of these incidents involved Wages or the use of deadly force. Furthermore, LeMay's allegation of excessive force against Baker occurred more than six years prior to the shooting of Cooperwood. It was investigated and determined to be without merit. *Rogers*, 152 F.3d at 799 ("Investigation of a complaint is sufficient as a matter of law to defeat a claim that the city responded inadequately to information about . . . prior misconduct."). As for the incident involving Recendiz, it is undisputed that no complaint was filed with the Kensett Police Department before Recendiz brought suit in federal court. Recendiz filed his complaint on October 5, 2005, which was seven months after Cooperwood was shot. There is no evidence on the record that Chief Yaerger, who is responsible for making policy decisions for the Kensett Police Department, knew about the incident prior to the filing of suit. *See P.H.*, 265 F.3d at 659 ("[A governmental entity] may not be found to have been deliberately indifferent to or to have tacitly authorized conduct of which it was unaware."). There is also no evidence that Recendiz's suit has merit. *Rogers*, 152 F.3d

---

[2] The defendant provided evidence of two other incidents where Wages brandished weapons. It is undisputed, however, that no force was applied in either of those incidents. Furthermore, no complaints were ever filed with the Kensett Police Department concerning those incidents.

at 799 ("There must also be some showing that the complaints had merit . . . ."). Even if that case has merit, it would not suffice to show a pattern of unconstitutional conduct so persistent and widespread as to have the force of law, nor that the City was deliberately indifferent. Because Cooperwood has not met his burden to produce evidence from which a reasonable jury could find that a pattern of unconstitutional conduct existed to which the City was deliberately indifferent, the City is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, summary judgment is GRANTED in favor of the City of Kensett and Yaerger and Wages in their official capacities. Partial summary judgment is also GRANTED in favor of Wages in his individual capacity on Cooperwood's claims relating to the initial stop. Document # 25. The case will be tried on Cooperwood's claims against Wages in his individual capacity that he used excessive force in violation of the United States Constitution and that he committed battery when he shot Cooperwood.

IT IS SO ORDERED this 15th day of December, 2006.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE